In the Matter of the CITY OF ROCHESTER, Respondent. LEHIGH VALLEY RAILROAD COMPANY et al., Appellants; PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Argued April 9, 1941; decided July 29, 1941.

*Herbert W. Smith* for Lehigh Valley Railroad Company, appellant. The Appellate Division erred in affirming the order of the Public Service Commission because such order contains provisions contrary to provisions of the Railroad Law (Cons. Laws, ch. 49). (*McAneny v. N. Y. C. R. R. Co.*, 238 N. Y. 122; *Matter of State Dept. of Public Works*, 233 App. Div. 64.)

*Clarence P. Moser* and *Herbert R. Reif* for Erie Railroad Company et al., appellants. The Erie Railroad Company cannot be required to contribute to the improvement because the Railroad Law authorizes such a requirement only in case of a change in the crossing or structure in accordance with the provisions of section 91 of such statute, and there is no such change as to either the crossing or the structure in this case. (*Matter of State Highway Comm.* [*Kirkwood Crossing*], 201 App. Div. 94; *Matter of State Commissioner of Highways* [*Ripley*], 239 N. Y. 279.) There are no approaches within the meaning of the statute in this case, and, therefore, there can be no statutory authority for exacting a contribution to the work to be done outside the railroad right of way. (*Matter of Town of Brant Grade Crossings*, 252 App. Div. 404; *McAneny v. N. Y. C. R. R. Co.*, 238 N. Y. 122; *City of New York v. New York, W. & B. R. R. Co.*, 245 App. Div. 109; *Matter of State Department of Public Works*, 233 App. Div. 64.)

*Sherman C. Ward* and *Gay H. Brown* for Public Service Commission, respondent. The order of the Public Service Commission is authorized by section 91 of the Railroad Law. (*Matter of State Commissioner of Highways*, 239 N. Y. 279.) The Public Service Commission properly included in the project the approach highways leading to

the bridges carrying the Erie and Lehigh Valley railroads over River boulevard. (*Matter of Grade Crossing [Lehigh Valley R. R. Co.]*, 264 N. Y. 195; *Matter of Brant Grade Crossings*, 252 App. Div. 404; 280 N. Y. 495; *Matter of Grade Crossing*, 238 App. Div. 484; 265 N. Y. 615.)

*William H. Emerson, Corporation Counsel (Charles B. Forsyth* of counsel), for City of Rochester, respondent.

*T. Carl Nixon* and *Carl F. Paul, Jr.*, for University of Rochester, respondent. The order of the Commission is based upon ample evidence, and adopts a reasonable plan. (*Matter of Grade Crossing*, 238 App. Div. 484; 265 N. Y. 615; *Matter of N. Y., O. & W. Ry. Co. [East Seneca St.]*, 244 App. Div. 664; 271 N. Y. 567; *Matter of Grade Crossing [N. Y. C. R. R. Co.]*, 255 N. Y. 320.)

LEWIS, J. Our inquiry goes to the question whether upon the record before us, in a proceeding instituted under sections 91 and 94 (subd. 4) of the Railroad Law (Cons. Laws, ch. 49), the Public Service Commission has exceeded its grant of statutory power.

The appeals are by our permission from an order of the Appellate Division unanimously affirming an order of the Public Service Commission, in a proceeding instituted by the city of Rochester under section 91 of the Railroad Law, to bring about structural changes in two railroad bridges owned respectively by the appellants, Lehigh Valley and Erie railroad companies, which bridges span River Boulevard at locations approximately 400 feet apart.

River Boulevard within the city of Rochester extends along the easterly bank of the Genesee river a distance of nearly two miles from Clarissa street southerly to Elmwood avenue. From its northerly end the boulevard is paved with asphalt forty feet wide for a distance of more than half a mile southerly to a point approximately three hundred feet east of the Lehigh Valley bridge. At that point begins the segment of the boulevard with which we are particularly concerned — a level stretch of roadway, 1,150 feet in length, which follows a bend in the river to the west and extends

thence westerly under the Lehigh Valley and Erie bridges in that order.

Upon the petition filed by the city of Rochester appropriate hearings were held by the Public Service Commission which led to a determination "that public safety requires a change in the location of River Boulevard at and in the vicinity of the Erie and Lehigh Valley bridges." Thereupon the Commission ordered that River Boulevard, at and near the site of the bridges, should be relocated and reconstructed 40 feet in width and should connect at either end of the project with existing pavements.

Concededly the ordered plan calls for no change whatever in the Erie overhead bridge. Apparently the abutments, clearance, dimensions and other features of that span as presently constructed satisfied the requirements of public safety and other factors to which the Commission gave consideration. If the project is completed according to the ordered plan, the only physical change which will occur at the immediate site of the Erie bridge will be the construction of a new curbed pavement 40 feet in width, which will displace the present uncurbed macadam pavement which is 27 feet in width. Notwithstanding these facts the order of the Public Service Commission requires the appellant Erie Railroad to pay 25% of the cost of reconstructing the segment of River Boulevard 1,150 feet in length, mentioned above, and 50% of the cost of removing and reconstructing on a changed location, approximately 425 linear feet of the pavement now in place at the westerly end of the project.

The order requires the appellant Lehigh Valley to make changes in its overhead bridge, including the relocation of the southerly abutment and structural changes in the northerly abutment, to accommodate a new pavement 40 feet in width which at that point will follow an altered alignment of the boulevard. The appellant Lehigh Valley is required by the order to pay 50% of the cost of all structural changes in its bridge and in addition 25% of the cost of reconstructing that portion of River Boulevard which

lies within the segment of 1,150 linear feet already mentioned. The order does not require the appellant railroads to contribute to the cost of reconstructing the segment 1,150 feet in length at a greater width or of material of better quality than the existing roadway.

From the facts outlined it is apparent that this proceeding does not relate to a grade crossing elimination. The separation of the grades of the highway involved and the tracks of the two railroads which cross it was accomplished long ago. Since that time River Boulevard, which is a connecting link between several State highway routes and now serves as a thoroughfare to a city park and two public institutions, has been subjected to a marked increase in vehicular traffic. In the brief filed by the city of Rochester the fact is stressed that in his report to the Public Service Commission the referee who presided at the hearings stated that the increase in traffic requires the improvement of River Boulevard to the status of an arterial highway. In that connection it is said in behalf of the city that, except for what is claimed to be a traffic hazard created by the presence of the two railroad bridges and the curve east of the Lehigh Valley bridge, the absence of intersecting streets and of barriers to visibility has made River Boulevard " ideal for fast traffic to pass safely along it." Thus is it made clear by the record and emphasized by briefs filed upon this appeal that — lacking all the elements of a grade crossing elimination — the present proceeding is in aid of a commendable effort by the city to solve its traffic problem. Our problem, however, is to determine — to what extent, if any, the appellant railroads are obligated by law to contribute to the cost of facilitating traffic on River Boulevard. Unless statutory authority is found for such action the contributions ordered in this proceeding may not be exacted. " The determinations of the Commission are valid only so far as it acts within the authority delegated to it by the legislature." (*McAneny* v. *N. Y. C. R. R. Co.*, 238 N. Y. 122, 130.)

In its consideration of evidence presented by the city and the railroads, the Public Service Commission first determined that " public safety requires a change in the location of River Boulevard at and in the vicinity of the Erie and Lehigh Valley bridges." Then followed the order, which the appellant railroads now resist, for which, it is said, authority is to be found in sections 91 and 94 (subd. 4) of the Railroad Law.

In so far as is material, section 91 provides: " The mayor and common council of any city * * * having jurisdiction over a * * * road which * * * is crossed by a steam surface railroad * . * . * above grade by structures heretofore constructed * * * may bring their petition in writing to the commission having jurisdiction, therein alleging that public safety requires an alteration in the manner of such crossing, its approaches, the method of crossing, the location of the crossing, a change in the existing structure by which such crossing is made, the closing and discontinuance of a crossing and the diversion of the travel thereon to another street, avenue, highway, road or crossing, or if not practicable to change such crossing from grade, below grade or above grade or to close or discontinue the same, the opening of an additional crossing for the partial diversion of travel from the grade, below grade or above grade crossing, and praying that the same may be ordered. * * * "

The statute quoted grants to the Public Service Commission no power to require of a railroad contribution to the cost of the ordered plan which the appellants now resist. We, therefore, look to section 94, subdivision 4, which provides in part: " Whenever a change is made as to an existing crossing or structure in accordance with the provisions of section ninety-one of this chapter, fifty per centum of the expense thereof shall be borne by the railroad corporation and twenty-five per centum by the municipal corporation and twenty-five per centum by the state. * * * ."

Testing the record by the language of the statute last quoted, we find no evidence that a " change is made as to an

existing crossing or structure " which affords a legal basis for the charges ordered against the appellant Erie Railroad. There is no evidence that any " change " whatever is to be made in its bridge " structure." As to the ordered charge against the appellant Erie Railroad of " 50 per cent of the cost of removing approximately 425 linear feet of the existing asphalt pavement on the westerly end of the project, and its reconstruction on changed location "— that work involves the relocation of a section of the boulevard which begins approximately 100 feet west of the Erie bridge, the purpose being thereby to bring that part of River Boulevard extending west of the project into alignment with the pavement to be constructed upon the segment 1,150 feet in length which passes under the two railroad bridges.

In the circumstances disclosed by the present record we do not find in section 94, subdivision 4, of the Railroad Law authority for such a charge against the appellant Erie Railroad. Nor do we interpret the statute, when applied to the facts in this proceeding, as authorizing that part of the order which directs that the appellants Erie and Lehigh Valley shall each " pay 25 per cent of the cost of reconstructing the River Boulevard for a distance of approximately 1150 linear feet."

However, the segment of approximately 1,150 linear feet last mentioned is crossed at two separate locations by the rights of way of the appellants Lehigh Valley and Erie railroads. Those two locations are spanned by the bridges here involved. The ordered plan calls for pavement reconstruction, with certain limitations, on the two separate areas of River Boulevard which are crossed by the rights of way of the appellant railroads. We believe that, within the language of section 94, subdivision 4, of the Railroad Law such pavement reconstruction within each of those two areas constitutes " a change * * * made as to an existing crossing " and that fifty per cent of the cost of such pavement reconstruction under its bridges is a legal charge against each of the appellants respectively.

The structural changes in the Lehigh Valley bridge and the apportionment of the cost thereof, which are directed by the order, are likewise authorized by section 94, subdivision 4, as changes to be made " as to an existing crossing or structure " where, as in this proceeding, the Public Service Commission has determined that public safety requires such alteration in a crossing.

We have not overlooked decisions to which counsel for the Public Service Commission has directed our attention and which it is said afford supporting authority for the Commission's order in this proceeding. Those rulings involved proceedings for the *elimination* of grade crossings under the Grade Crossing Elimination Act. (L. 1928, ch. 678, or §§ 89, 90, 94, subds. 1, 2 and 3 of the Railroad Law.) They did not involve changes in existing crossings or structures and the apportionment of cost thereof as to which the Commission's power is derived from section 94, subdivision 4, of the Railroad Law.

The orders should be reversed, without costs, and the matter remitted to the Public Service Commission for proceedings in accordance with this opinion.

FINCH and DESMOND, JJ., dissent in the following memorandum: Giving to section 91 of the Railroad Law a broad construction to effect its beneficent purposes and to distribute fairly the cost of necessary safety measures, we consider that there was as to the Erie railroad bridge, such an " alteration in the manner of  *  *  *  crossing " by the relocation of the highway under and approaching that bridge as to justify the Commission in charging Erie with its fair share of the cost of the work done on both the strips of highway described in the opinion of Judge LEWIS. The orders should be affirmed.

LEHMAN, Ch. J., LOUGHRAN and CONWAY, JJ., concur with LEWIS, J.; FINCH and DESMOND, JJ., dissent in separate memorandum; RIPPEY, J., taking no part.

Orders reversed, etc.